Slip Op. 15-109

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ICDAS CELIK ENERJI TERSANE VE ULASIM SANAYI, A.S., <br><br>             Plaintiff, <br><br>         v. <br><br> UNITED STATES, <br><br>             Defendant. | Before: Leo M. Gordon, Judge <br><br> Court No. 14-00267 |

**OPINION and ORDER**

[Plaintiff's motion to re-caption Amended Complaint granted; Defendant and Defendant-Intervenors' cross-motions to dismiss denied.]

Dated: September 24, 2015

   Matthew M. Nolan, Diana D. Quaia, and Nancy A. Noonan, Arent Fox LLP of Washington, DC for Plaintiff Icdas Celik Enerji Tersane ve Ulasim Sanayi A.S.

   Richard P. Schroeder, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of Washington, DC, for Defendant, United States. With him on the briefs were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director. Of counsel on the briefs were Scott McBride, Senior Attorney, U.S. Department of Commerce, Office of the Chief Counsel for Trade Enforcement and Compliance of Washington, DC.

   Alan H. Price, John R. Shane, and Maureen E. Thorson, Wiley Rein LLP of Washington, DC for Defendant-Intervenors Rebar Trade Action Coalition, Gerdau Ameristeel U.S. Inc., Commercial Metals Company, and Byer Steel Corporation.

   Gordon, Judge: This action involves a U.S. Department of Commerce ("Commerce" or "the Government") final determination in the countervailing duty investigation of steel concrete reinforcing bar from the Republic of Turkey. Steel Concrete Reinforcing Bar from the Republic of Turkey, 79 Fed. Reg. 54,963 (Dep't of Commerce

Sept. 15, 2014) (final affirmative countervailing duty determination, final affirmative critical circumstances determination) ("Final Determination"); see also Steel Concrete Reinforcing Bar from the Republic of Turkey, 79 Fed. Reg. 65,926 (Dep't of Commerce Nov. 6, 2014) (final countervailing duty order) ("Order"). Plaintiff Icdas Celik Enerji Tersane ve Ulasim Sanayi, A.S. ("Icdas") moves to have the court construe its Amended Complaint as a concurrently filed summons and complaint deemed filed as of November 26, 2014, or in the alternative, to amend the caption of the Amended Complaint to read "Summons and Complaint" and deem the revised document filed as of the same date. See Mot. of Pl. Icdas Celik Enerji Tersane ve Ulasim Sanayi A.S. to Construe Pl.'s Nov. 26, 2014 Am. Compl. as a Concurrently Filed Summons and Compl. and Deem the Summons and compl. Filed as of Nov. 26, 2014, or, Alternatively, Mot. to Amend Pl.'s Nov. 26, 2014 Am. Compl. to Recaption it as Summons and Compl. and Deem the Recaptioned Summons and Compl. Filed as of Nov. 26, 2014 (Jan. 9, 2015), ECF No. 19 ("Pl.'s Mot.").

The Government and Defendant-Intervenor Rebar Trade Action Coalition ("RTAC") cross-move pursuant to USCIT Rule 12(b)(1) to dismiss Icdas' Amended Complaint for lack of jurisdiction. See Def.'s Cross-Mot. to Dismiss Pl.'s Am. Compl. for Lack of Jurisdiction and Def.'s Resp. to Pl.'s Jan. 9, 2015 Motion (Feb. 2, 2015), ECF No. 25 ("Def.'s Cross-Mot."); RTAC's Resp. in Opp. to Pl.'s Jan. 9, 2015 Mot.; RATC's Mot. to Dismiss (Feb. 2, 2015), ECF No. 24 ("RTAC's Cross-Mot."); see also Resp. of Pl. Icdas Celik Enerji Tersane ve Ulasim Sanayi A.S. to Def. and Def.-Intervenor's Cross-Mots. to Dismiss (Mar. 25, 2015), ECF No. 29 ("Pl.'s Resp."); Def.'s Reply in Supp. of its Cross-

Mot. to Dismiss (June 17, 2015), ECF No. 38 ("Def.'s Reply"); Rebar Trade Action Coalition's Reply to Pl.'s Mar. 25, 2015 Resp. to the Feb. 4, 2015 Cross-Mots. to Dismiss (June 17, 2015), ECF No. 37 ("RTAC's Reply").

The Government and RTAC argue that the court lacks subject matter jurisdiction under Section 516A of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a),[1] and 28 U.S.C. § 1581(c) (2012) because Icdas filed its summons before Commerce published the Order in the Federal Register. For the reasons set forth below, the court grants Icdas' requested relief and amends the caption of the Amended Complaint to read "Summons and Complaint" and deems the re-captioned document filed as of November 26, 2014. The court also denies the Government and RTAC's cross-motions to dismiss.

## I. Standard of Review

"Plaintiffs carry the burden of demonstrating that jurisdiction exists." Techsnabexport, Ltd. v. United States, 16 CIT 420, 422, 795 F. Supp. 428, 432 (1992) (citing McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936)). In deciding a Rule 12(b)(1) motion to dismiss that does not challenge the factual basis for the complainant's allegations, the court assumes "all factual allegations to be true and draws all reasonable inferences in plaintiff's favor." Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995).

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition.

## II. Discussion

Under 28 U.S.C. § 2636, an action contesting a final affirmative countervailing duty determination "is barred unless commenced in accordance with" 19 U.S.C. § 1516a. 28 U.S.C. § 2636(c). Section 1516a(a)(2)(A), in turn, outlines a brief window of time for commencing such an action at the U.S. Court of International Trade. A party must file a summons "within thirty days after" the date the countervailing duty order is published in the Federal Register, and within 30 days thereafter, a complaint. 19 U.S.C. § 1516a(a)(2)(A)(i)(II). Though § 1516a(a)(2)(A) provides for a two-step process to commence an action challenging a countervailing duty order, the Court's Rules "encourage[]" commencement of a trade action "by the concurrent filing of a summons and complaint." USCIT R. 3, Prac. Cmt. (concurrent filing encouraged to "expedite" prosecution of action).

A countervailing duty order is based on both a final affirmative subsidy determination by Commerce and a final affirmative injury determination by the U.S. International Trade Commission ("ITC"). 19 U.S.C. § 1671d(c)(2). A party challenging either Commerce's final affirmative determination or the ITC's final affirmative determination may also contest any negative part of those determinations. 19 U.S.C. § 1516a(a)(2)(B)(i). The "negative part" language is limited to only those negative decisions subsumed in a <u>final affirmative determination</u> by Commerce or the ITC. <u>Id.</u>

Section 1516a differentiates a <u>negative part</u> from a <u>final negative determination</u>. The latter is (1) a separate type of reviewable determination, 19 U.S.C. § 1516a(a)(2)(B)(ii), and (2) challengeable under § 1516a(a)(2)(A), but a different

subdivision, § 1516a(a)(2)(A)(i)(I). A challenge to a final negative determination may include a challenge to any part of a final affirmative subsidy or final injury determination that excludes a particular company or product. 19 U.S.C. § 1516a(a)(2)(B)(ii).

Both a "negative part" of a final affirmative determination and a final negative determination, including a certain affirmative part, are judicially reviewable, albeit under different provisions of § 1516a(a)(2)(A). The statute provides an identical time period, 30 days, for filing a summons to commence the challenge to either type of determination. The difference is the triggering event—the date of publication of the countervailing duty order in the Federal Register for a final affirmative determination (including any "negative part"), 19 U.S.C. § 1516a(a)(2)(A)(i)(II) ("order provision"), as opposed to the date of publication in the Federal Register of the notice of a final negative determination, including any part of a final affirmative determination that excludes a company or product, 19 U.S.C. § 1516a(a)(2)(A)(i)(I) ("final determination provision").

Icdas filed its summons on October 14, 2014, 29 days after Commerce published the Final Determination. The countervailing duty order on rebar from Turkey, however, was published on November 6, 2014. Although Icdas filed a complaint on November 10, 2014 and an amended complaint on November 26, 2014, Icdas did not file a new summons.

Icdas requests that the court construe its Amended Complaint as a concurrently filed Summons and Complaint pursuant to USCIT Rule 8(f). Pl.'s Mot. at 4-8. In the alternative, Icdas requests permission to amend the caption on the Amended Complaint to read "Summons and Complaint" pursuant to USCIT Rule 15. Id. at 2. Because Icdas

filed the Amended Complaint on November 26, a date within 30 days of the Order's publication in the Federal Register, Icdas argues that either solution would satisfy the time period for filing a summons described in § 1516a(a)(2)(A).

In their briefs the parties argue about the applicability of equitable tolling. The doctrine of equitable tolling, though, does not seem to apply here because no time period needs to be "tolled." This action presents a different sort of problem because Icdas filed its summons early, not late. The question here is more basic and depends on whether the Court's Rules can accommodate Icdas' requested relief. The court believes that they can.

As noted, Icdas seeks relief under USCIT Rules 8 and 15. USCIT Rule 8 governs "General Rules of Pleading" and deals mainly with the sufficiency of statements within a pleading, whereas USCIT Rule 15 governs "Amended and Supplemental Pleadings." Of the two, USCIT Rule 15 seems to better cover Icdas' request to re-caption its Amended Complaint as a "Summons and Complaint." The court and the parties, however, are dealing with an early filed summons, a "notice" document, not a pleading. See Giorgio Foods, Inc. v. United States, 31 CIT 1261, 515 F. Supp. 2d 1313, 1319 (2007) (citing DaimlerChrysler v. United States, 442 F.3d 1313, 1318 (Fed. Cir. 2006) ("The purpose of a summons is to provide notice to other parties of commencement of an action."). Re-captioning Icdas' Amended Complaint as a concurrently filed "Summons and Complaint" amends both the summons and (to a lesser extent) the Amended Complaint. The court therefore believes that USCIT Rule 3(e), which governs "Amending a Summons," is implicated as well.

USCIT Rule 3 provides that "[t]he court may allow a summons to be amended at any time on such terms as it deems just, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the amendment is allowed. Likewise, under USCIT Rule 15, "the court should freely give leave [to amend] when justice so requires." USCIT R. 15(a). More specifically, leave to amend should be given freely absent bad faith, prejudice to the opposing party, or futility of amendment. Foman v. Davis, 371 U.S. 178, 182 (1962).

Here, the court can identify no prejudice to the Government or RTAC by granting Icdas its requested relief. Icdas' summons did no more than provide the Government and other interested parties to the investigation with early notice of this action, something that is hard to characterize as prejudicial. The Government and RTAC identify no change between Icdas' filing and the publication of the Order that might have affected Icdas' cause of action. Additionally, Icdas did not gain any litigation advantage by filing early.

RTAC argues that allowing the action to go forward will prejudice both it and the Government because they will incur litigation costs while defending an action that would otherwise be dismissed. RTAC's Cross-Mot. at 9-10. Dismissal here, though, creates more prejudice than it prevents. Commerce preliminarily made a negative determination before assigning a 1.25% countervailing duty rate for Idcas in the Final Determination. See Steel Concrete Reinforcing Bar From the Republic of Turkey, 79 Fed. Reg. 10771 (Dep't of Commerce Feb. 26, 2014) (prelim. determ.). Icdas served its summons and complaint soon after the Final Determination, leaving no question that Icdas intended to challenge that determination.

As Icdas explains, the Amended Complaint contains all of the information that would appear in a summons. While no rule lays out precisely what form a summons must take, this Court's form summons contains five blank fields: identification of the parties, the plaintiff's name and standing, a brief description of the contested determination, the date of the contested determination, and the date of the notice of the contested determination's publication in the Federal Register. USCIT Rs., Form 3. Icdas provides a table outlining where each of these pieces of information can be found in its Amended Complaint. Pl.'s Mot. at 7-8 (citing Am. Compl. at pp. 1-2, 6-8 (Nov. 26, 2014), ECF No. 11). The court therefore cannot identify a substantive difference between Icdas' proposed re-captioned Amended Complaint and a concurrently filed summons and complaint. Cf. Pollak Imp.-Exp. Corp. v. United States, 52 F.3d 303, 306-08 (Fed. Cir. 1995) (describing content of summons in an action seeking to challenge a denied customs protest as a correctable, non-jurisdictional error); Fed. R. Civ. P. 83(a)(2) ("A local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply.").

Icdas also acted diligently and without bad faith. Icdas filed early, not late. Icdas did so because it was apparently confused by the mixed affirmative and negative aspects of the Final Determination. See Pl.'s Resp. at 28-30. Icdas' confusion is somewhat understandable given the complexity of the judicial review provision. Icdas thought the Final Determination might be the kind of mixed determination that is challenged by filing a summons within 30 days of the publication of the notice of the final determination, as opposed to publication of the countervailing duty order. Id. Icdas was incorrect because

the Final Determination is labeled a "final affirmative determination," Final Determination, 79 Fed. Reg. at 54,963, meaning that judicial review is triggered by the order provision, and not the final determination provision. Despite its confusion, Icdas did not act in bad faith nor did its early filing prejudice the Government or RTAC. Icdas' actions are consistent with those of a party diligently seeking to advance its claim by filing sooner rather than later. Each of the Rule 3(e) and 15 factors therefore support Icdas' request for relief.

The court though must first address a potential jurisdictional issue because "it is well-settled that this Court cannot, through its rules, enlarge its jurisdiction." Am. Chain Ass'n v. United States, 13 CIT 1090, 1093, 746 F. Supp. 112, 114-15 (1989); see also United States v. Sherwood, 312 U.S. 584, 589-90 (1941) ("[A]uthority conferred upon a court to make rules of procedure for the exercise of its jurisdiction is not an authority to enlarge that jurisdiction . . . ."); USCIT R. 1 ("The rules are not to be construed to extend or limit the jurisdiction of the court."). The Government and RTAC argue that the time period for filing a summons described in 19 U.S.C. § 1516a(a)(2)(A) is jurisdictional. Icdas argues that it is non-jurisdictional. Icdas maintains that it is instead a "claim processing" rule, meaning the court has the discretion to grant its motion. The court agrees with Icdas.

In Kontrick v. Ryan, 540 U.S. 443 (2004), a unanimous Supreme Court opined that "[c]larity would be facilitated if courts and litigants used the label 'jurisdictional' not for claim-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." Id. at 455. Since Kontrick, the Supreme Court has developed a

"readily administrable bright line" for distinguishing between "jurisdictional" requirements and "claim-processing" requirements:

> If the legislature <u>clearly states</u> that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

<u>Arbaugh v. Y & H Corp.</u>, 546 U.S. 500, 515-16 (2006) (emphasis added). The Supreme Court has applied this same "clearly stated intent" standard to statutes governing lawsuits against the United States. <u>United States v. Kwai Fun Wong</u>, 135 S. Ct. 1625, 1630-38 (2015).

In analyzing whether "Congress imbued a procedural bar with jurisdictional consequences," the court turns to "traditional tools of statutory construction." <u>Id.</u> at 1632. These tools include consideration of a procedural rule's text, context, and historical treatment. <u>Sebelius v. Auburn Reg'l Med. Ctr.</u>, 133 S. Ct. 817, 824-25 (2013); <u>see also Reed Elsevier, Inc. v. Muchnick</u>, 559 U.S. 154, 160-69 (2010) (holding a pre-commencement registration requirement not jurisdictional because it "is not clearly labeled jurisdictional, is not located in a jurisdiction-granting provision, and admits of congressionally authorized exceptions," and because the "registration requirement is more analogous to the nonjurisdictional conditions" the Supreme Court had considered in earlier cases).

The two provisions at issue here, 28 U.S.C. § 2636(c) and 19 U.S.C. § 1516a(a)(2)(A), prescribe an exception-free time period for filing a summons in order to commence an action challenging a final affirmative countervailing duty determination.

Under 28 U.S.C. § 2636, an action "is barred unless commenced in accordance with the rules of the Court of International Trade within the time specified in such section." 28 U.S.C. § 2636(c). 19 U.S.C. § 1516a(a)(2)(A) specifies that:

> Within thirty days after . . . the date of publication in the Federal Register of . . . an antidumping or countervailing duty order based upon any [final affirmative antidumping or countervailing duty] determination[,] . . . an interested party . . . may commence an action in the United States Court of International Trade by filing a summons, and within thirty days thereafter a complaint . . . .

19 U.S.C. § 1516a(a)(2)(A).

The text and context of 28 U.S.C. § 2636(c) and 19 U.S.C. § 1516a(a)(2) indicate that the time period is not jurisdictional. Neither provision mentions the word "jurisdiction" or otherwise speaks in jurisdictional terms. See 28 U.S.C. § 2636(c); 19 U.S.C. § 1516a(a)(2); cf. United States v. Wong, 135 S. Ct. 1625, 1632-33 (explaining that 28 U.S.C. § 2401, which states that "every civil action commenced against the United States shall be barred unless the complaint is filed" within a certain time period, does not speak in jurisdictional terms). There is simply no "express jurisdictional language or language implying that [§ 1516a(a)(2)'s] timing requirements are jurisdictional." Baroque Timber Indus. (Zhongshan) Co. v. United States, 36 CIT ___, ___, 865 F. Supp. 2d 1300, 1306 (2012). Contextually, § 2636 is located in Chapter 169 of Title 28, United States Code, which is entitled "Court of International Trade Procedure." Congress separated 28 U.S.C. § 2636(c) and 19 U.S.C. § 1516a(a)(2) from this Court's jurisdictional grant in 28 U.S.C. § 1581, indicating an intent to distinguish the 30-day time period from this Court's subject matter jurisdiction. See 28 U.S.C. §§ 1581, 2636; Wong, 135 S. Ct. at

1633 (noting that the Supreme Court "has often explained that Congress's separation of a filing deadline from a jurisdictional grant indicates that the time bar is not jurisdictional"); Reed Elsevier, 559 U.S. at 164-65 (noting the same in the context of other procedural rules located in separate provisions from jurisdictional grants).

Regarding historical treatment, the Supreme Court has clarified that "the relevant question . . . is not . . . whether [a statute] itself has long been labeled jurisdictional, but whether the type of limitation that [a statute] imposes is one that is properly ranked as jurisdictional absent an express designation." Reed Elsevier, 559 U.S. at 168-69 (emphasis added). When it comes to timing requirements, the Supreme Court has not minced words: "[T]ime prescriptions, however emphatic, are not properly typed jurisdictional." Arbaugh, 546 U.S. at 510 (quoting Scarborough v. Principi, 541 U.S. 401, 414 (2004)) (internal quotation marks omitted); accord Henderson ex rel. Henderson v. Shineski, 562 U.S. 428, 435 (2011) ("Filing deadlines, such as the 120–day filing deadline at issue here, are quintessential claim-processing rules.").

In Bowles v. Russell, 551 U.S. 205 (2007), the Supreme Court did hold that a time limit governing the filing of a notice of appeal from a district court to a circuit court was jurisdictional. Id. at 209-15. There the Court emphasized that its own repeated interpretation of appeal deadlines as jurisdictional over the course of more than a century was determinative. Id.; see Union Pac. R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region, 558 U.S. 67, 82 (2012) (unanimous opinion distinguishing Bowles as "relying on a long line of this Court's decisions left undisturbed by Congress"); Auburn Reg'l Med. Ctr., 133 S. Ct. at 825 (unanimous opinion

Court No. 14-00267 Page 13

distinguishing Bowles as relying on a "century's worth of precedent and practice in American courts" (quoting Bowles, 551 U.S. at 209 n.2 (internal quotation marks omitted))).

Here the court is not faced with historical Supreme Court treatment of the time period in § 1516a(a)(2). In fact, the Supreme Court has never considered whether the time limitation imposed by § 1516a(a)(2) is one "that is properly ranked as jurisdictional." See Reed Elsevier, 559 U.S. at 168. Accordingly, the court believes, despite arguments from the Government and RTAC to the contrary, that the circumstances in this action are distinguishable from Bowles. Regardless, the Government and RTAC cite two Court of Appeals for the Federal Circuit ("Federal Circuit") decisions from the 1980s that held that the timing requirements of § 1516a are jurisdictional: Georgetown Steel Corp. v. United States, 801 F.2d 1308 (Fed. Cir. 1986); NEC Corp. v. United States, 806 F.2d 247 (Fed. Cir. 1988). The Government and RTAC argue that Georgetown and NEC require dismissal. In each of those cases, the Federal Circuit held that the late filing of a summons or complaint deprived this Court of jurisdiction. Georgetown, 801 F.2d at 1311-13 (discussing untimely complaint); NEC, 806 F.2d at 248-49 (discussing untimely summons). The Federal Circuit stated, "[t]he proper filing of a summons to initiate an action in the Court of International Trade is a jurisdictional requirement which appellant has failed to meet." NEC, 806 F.2d at 248 (emphasis added); see also Georgetown, 801 F.2d at 249.

Georgetown and NEC, however, both addressed late filings; in neither case did the Federal Circuit consider or address the issue of an early filing. See NEC, 806 F.2d at

248; Georgetown, 801 F.2d at 249. Here, the summons was filed before § 1516a(a)(2)(A)'s deadlines expired. Returning to the guidance from the Supreme Court, "Congress must do something special, beyond setting an exception-free deadline, to tag a statute of limitations as jurisdictional." Wong, 135 S. Ct. at 1632 (emphasis added). Georgetown and NEC interpreted § 1516a(a) as setting "[c]onditions upon which the government consents to be sued" that "must be strictly observed and are not subject to implied exceptions," like the equitable tolling requested by the late-filing plaintiffs in those cases. NEC, 806 F.2d at 249; see also Georgetown 801 F.2d at 1312. The Supreme Court in Wong, though, explained that "because equitable tolling 'amounts to little, if any, broadening of the congressional waiver [of sovereign immunity],' . . . a rule generally allowing tolling is the more 'realistic assessment of legislative intent.'" Wong, 135 S. Ct. at 1367 (quoting Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95 (1990)). And although Georgetown and NEC labeled section 1516a's time limits "jurisdictional" in the late 1980s, and the Court of International Trade has followed suit for the last almost 30 years, the court believes that more recent pronouncements from the Supreme Court have undercut the ratio decidendi of those decisions.

The hard reality here is that Wong has extended Arbaugh and its progeny to effectively supplant the Federal Circuit's rationale in Georgetown and NEC. Wong, unlike Henderson, involved statutory time limitations governing the commencement of actions at an Article III court like this Court. Wong, 135 S. Ct. at 1632-33 (analyzing the Federal Torts Claims Act). Wong rejected the two main lines of reasoning the Federal Circuit used in Georgetown and NEC: mandatory language in the statute, and sovereign

immunity. Compare Georgetown 801 F.2d at 1311-13 (holding § 1516a's time limitations to be jurisdictional because of mandatory language and the presumed limited extent of the Federal Government's waiver of sovereign immunity) and NEC, 806 F.2d at 249 (same), with Wong, 135 S. Ct. at 1631-38 (explaining that tolling can apply "even when the time limit is important (most are) and even when it is framed in mandatory terms (again, most are)" and that Irwin "forecloses" the sovereign immunity argument).

As a final note, the court acknowledges that Baroque Timber considered a similar issue three years ago and came to a different conclusion. Baroque Timber evaluated § 1516a(a)(2)(A)'s text and context and concluded that there is "no indication" that Congress intended the timing requirement to be treated as jurisdictional. Baroque Timber, 36 CIT at ___, 865 F. Supp. 2d at 1306. In that court's view, however, the prior Federal Circuit decisions controlled the outcome on this issue because of the Supreme Court's emphasis on the importance of historical treatment in Bowles, as well as the idiosyncratic nature of rules governing appeals from the Board of Veterans' Appeals to the Court of Appeals for Veterans Claims described in Henderson. Baroque Timber, 36 CIT at ___, 865 F. Supp. 2d at 1308 (discussing Bowles and Henderson). Baroque Timber, though, recognized in dicta that developments at the Supreme Court might not require a similar outcome in future cases: "While it appears that the timing requirements of 19 U.S.C. § 1516a(a)(2) should be reconsidered in light of the Arbaugh standard and its progeny, such a reconsideration is not the province of this court where the Supreme Court has not extended further its own analysis." Id. at ___, 865 F. Supp. 2d at 1308-09. With Wong, the court's observation in Baroque Timber that the applicable time period "falls between"

the relevant Supreme Court precedents is no longer accurate. See Baroque Timber, 36 CIT at ___, 865 F. Supp. 2d at 1307-08(discussing Bowles and Henderson and distinguishing both from time period for filing a summons at this Court); Wong, 135 S. Ct. at 1631-38 (holding that a mandatory time limitation involving actions against the Federal Government in Article III courts is not jurisdictional).

In sum, Congress did not "clearly state" that it intended for the time period in § 1516a(a)(2)(A) to be treated as jurisdictional. The existing Federal Circuit precedents, which predate that standard by almost two decades, are not controlling and have been supplanted by more recent Supreme Court decisions. Because the time period is not jurisdictional, the court may entertain Icdas' motion. And as explained above, after measuring Icdas' explanation for the early filing of its summons against the statutory scheme, the underlying administrative determination, the Court's Rules, and the arguments of the parties, the court believes the only sensible outcome here is to grant Icdas' motion.

### III. Conclusion

The court grants Icdas' motion to amend the caption of the Amended Complaint to read "Summons and Complaint," and deems the re-captioned document filed as of November 26, 2014. The court also denies the Government and RTAC's cross-motions to dismiss.

Accordingly, it is hereby

**ORDERED** that Plaintiff's motion to re-caption its Amended Complaint is granted; it is further

Court No. 14-00267 Page 17

**ORDERED** that Plaintiff's Amended Complaint is re-captioned as Plaintiff's Summons and Complaint; it is further

**ORDERED** that Plaintiff's re-captioned Summons and Complaint are deemed filed as of November 26, 2014; and it is further

**ORDERED** that Defendant and Defendant-Intervenor's motions to dismiss are denied.

                                                  /s/ Leo M. Gordon
                                             Judge Leo M. Gordon

Dated:   September 24, 2015
           New York, New York